IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAFONZO R. TURNER,

        Plaintiff,               No. 2:09-cv-0117 WBS KJN P

     vs.

SHERIFF OF SACRAMENTO,
et al.,                      ORDER AND

        Defendants,            FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983.  This case is proceeding on plaintiff's amended complaint, filed April 20, 2009, alleging that defendants used excessive force on plaintiff on January 19, 2005.  Pending before the court is the motion for summary judgment filed by defendants Sheriff John McGinness and the Sacramento County Jail.  As explained more fully below, the court recommends that plaintiff not be permitted leave to further amend, and that defendants' motion for summary judgment be granted.

////

////

1

II.  The Instant Record and Plaintiff's Deposition Testimony

Review of the court record demonstrates much confusion as to the actual date and nature of plaintiff's claims alleged herein, as well as whether plaintiff intended to pursue allegations he now claims occurred on different days.  The resolution of the instant case will turn on what information plaintiff provided to the court and when, as well as when or whether plaintiff was aware of particular claims and the actual dates they occurred, and whether plaintiff should be allowed to file a third amended complaint at this late stage of the proceedings.  Accordingly, the court will first review the court record and pertinent portions of plaintiff's deposition testimony.

A.  Review of Instant Record

Following is a review of the instant record, with an emphasis on plaintiff's filings.

Plaintiff was housed in the Sacramento County Main Jail from February 7, 2005, until July 7, 2005.  Over three years later, plaintiff filed the original complaint on December 16, 2008.  On January 28, 2009, plaintiff's complaint was dismissed, and plaintiff was granted leave to file an amended complaint.  (Dkt. No. 8.)  After receiving an extension of time, plaintiff filed the amended complaint on April 20, 2009.  (Dkt. No. 18.)  On August 7, 2009, defendant Sacramento County Jail, and on September 28, 2009, defendant McGinness, filed motions to dismiss this action as barred by the statute of limitations.

On November 23, 2009, plaintiff was directed "to clarify whether the May 16, 2005, excessive force incident is different from the January 19, 2005, excessive force incident," because the original complaint alleged plaintiff was subjected to excessive force on May 16, 2005,[1] and the amended complaint alleged plaintiff was subjected to excessive force on January

_____

[1]  The original complaint alleged, in toto:

On or about May 16, [20]05, I was beat up by Sacramento County Jail Sheriff.  Four of them entered my cell and beat me unconscious.  My nose was broken, my cheek bone shattered, my

19, 2005.  (Dkt. No. 34.)  The court was uncertain whether plaintiff was pleading two separate

incidents of excessive force, or was simply correcting the date the one alleged incident occurred.

(Dkt. No. 34.)  Plaintiff filed a "declaration"[2] on February 4, 2010, stating that "to the best of

plaintiff's recollection the events occurred on or about January 19, 2005."  (Dkt. No. 39 at 3.)

On April 1, 2010, defendants' motions to dismiss were denied, and defendants filed an answer on

April 20, 2010.  A discovery and scheduling order issued on May 11, 2010.  (Dkt. No. 61.)  The

scheduling order provided that all pretrial motions shall be filed on or before November 8, 2010.

(Id.)

        Plaintiff's motion to file a second amended complaint was denied on October 21,

2010.  (Dkt. No. 81.)  Plaintiff had attempted to add 32 new defendants and allegations

concerning nine different incidents during 2005, none of which occurred on January 19, 2005.

---

            eye socket fractured, both eyes blackened, and I received 4 to 6
            stitches to my face.  I was told I would need reconstructive surgery
            and never received it because the hospital refused to give me care.

(Dkt. No. 1 at 2.)  The original complaint was signed under penalty of perjury.  (Id.)  Plaintiff
named the Sacramento County Jail as the sole defendant, but noted he did not remember the
defendants' names.  (Id.)  In his unverified amended complaint, plaintiff named the Sheriff of
Sacramento and Sacramento County Jail as defendants, and alleged that on January 19, 2005,
during sergeant's court, certain unnamed defendants subjected plaintiff to excessive force, and
later returned to his cell where those defendants then pulled plaintiff off his bunk, squeezed
plaintiff's throat so hard he was rendered unconscious "only to wake up some 10 minutes later
spiraled across [his] cell floor naked in a pool of blood and vomit and bruises from head to toe,
[he] had been severely beaten as [he] laid on the floor in [his] own feces."  (Dkt. No. 18 at 5-6.)
Although plaintiff refers to a "cell extraction" on page two, plaintiff does not clarify that this was
a different incident from the subsequent entry into his cell by officers on page six.  (Dkt. No. 18
at 2:26-28, 6:3-20.)  Following additional briefing, the court addressed defendants' motion to
dismiss, and found plaintiff's amended complaint relates back to the original complaint "because
it is based on an incident of alleged excessive force where four Sacramento County Jail officers
entered his cell and allegedly beat him unconscious."  (Dkt. No. 43 at 4.)

        [2]  Although plaintiff titled the February 4, 2010 filing as a "declaration," the document is
not signed under penalty of perjury, but states:

            I, Lafonzo R. Turner, declare that the foregoing is true and correct
            to the best of my knowledge and after being duly sworn under the
            laws of the United States and State of California.

(Dkt. No. 39 at 6.)

1   (Dkt. No. 81 at 3, see Dkt. No. 75 (plaintiff's proposed second amended complaint).)  In

2   addition, the court found the second amended complaint failed to comply with Rule 8 of the

3   Federal Rules of Civil Procedure, and plaintiff sought to improperly join unrelated incidents

4   spanning July 7, May 31, April 15, April 11, April 8, April 4, March 21, March 1, and February

5   28 of 2005, against multiple defendants, involving different legal issues, in violation of Rules

6   18(a) and 20 of the Federal Rules of Civil Procedure.  (Dkt. No. 81.)

7           In the opposition to the motion to amend, defendants suggested that the alleged

8   excessive force incident may have actually occurred on April 8, 2005, but in light of plaintiff's

9   February 4, 2010 filing wherein plaintiff stated it occurred on or about January 19, 2005, the

10  court was reluctant to concur.  (Dkt. No. 81 at 5-6.)  Neither the motion to amend nor the

11  proposed second amended complaint explained the omission of events occurring on January 19,

12  2005, or the proposed addition of the newly-named defendants.

13          Plaintiff failed to timely object to this court's characterization or clearly concede

14  that the sergeant's court incident actually occurred on April 8, 2005.  Rather, on December 2,

15  2010, plaintiff filed an untimely motion for reconsideration by the district court,[3] claiming both

16  the original complaint and the amended complaint "do not contain any correct names, dates, or

17  times of any occurrences, and the first original complaint was in error."  (Dkt. No. 87 at 2.)  With

18  regard to his amended complaint, plaintiff stated that he "wrote out [his] story to the jailhouse

19  lawyer describing a[n] incident by incident occurrence of excessive force."  (Dkt. No. 87 at 3.)

20  In this story, plaintiff described his claims based on incidents occurring after sergeant's court,

21  two deputies coming into his cell and beating him so that he allegedly suffered a broken nose,

22  cheekbone and eyesocket, and claimed he was "tortured and . . . denied basic necessities on

23  several different occasions."  (Dkt. No. 87 at 3.)  Plaintiff alleged the jailhouse lawyer wrote a

24  completely different story than plaintiff provided, but because the jailhouse lawyer insisted,

25

26          [3]  Plaintiff signed this motion under penalty of perjury.  (Dkt. No. 87 at 15.)

4

plaintiff filed the amended complaint.  (Dkt. No. 87 at 3.)  However, before filing the amended complaint,

> plaintiff did change the date, because plaintiff wanted to be able to explain the cruel and unusual 8th Amendment violations started on/or about the time he first arrived at Sacramento County Jail ad-seg and continued until plaintiff left out of fear for his life.

(Dkt. No. 87 at 3-4.)  Plaintiff also claimed he could not recall any names, dates or times due to post traumatic stress disorder, so [plaintiff] wasn't able to write an accurate complaint until he received discovery on or about April 15, 2010.  (Dkt. No. 87 at 4.)  Plaintiff then claimed prison officials' interference with plaintiff's legal and writing materials, as well as access to the law library, also prevented plaintiff from earlier seeking leave to amend.  (Id.)  However, rather than confirm that January 19, 2005 was an incorrect date, or clarify that April 8, 2005, was the correct date, plaintiff stated that May 16 and January 19, 2005, dates were "the same as plaintiff was tortured continuously and the cumulative injuries" violated the Eighth Amendment.  (Dkt. No. 87 at 5.)  Later, plaintiff went on to state that the January 19 date is incorrect, and that the May 16, 2005 date was not chosen by plaintiff, "because plaintiff was attempting to recall the earliest date as to acknowledge the fact plaintiff was tortured."  (Dkt. No. 87 at 7.)  Plaintiff claimed he attempted to cure the record, without discovery, back in January 2010,[4] but was being helped by a jailhouse lawyer "that better understood" that plaintiff's amended complaint was "all blended into one statement claim and several transactions and occurrences of cumulative acts of excessive force, cruel and unusual punishment, amounting to torture over a four to five month period."  (Dkt. No. 87 at 6.)  Plaintiff's motion for reconsideration was denied by the district court on December 15, 2010, as untimely filed.  (Dkt. No. 92.)

In plaintiff's motion to file a second amended complaint, plaintiff claimed, in toto,

---

[4] The only substantive filing by plaintiff, signed on January 26, 2010, is his response to the court's request to clarify plaintiff's pleadings.  (Dkt. No. 39.)  As noted above, plaintiff's filing confirmed that "to the best of plaintiff's recollection the events occurred on or about January 19, 2005."  (Dkt. No. 39 at 3.)

1  that he moved to amend to establish names, dates, and incidents, in the interest of justice.  (Dkt.

2  No. 74.)

3          In his January 18, 2011 declaration in opposition to the motion for summary

4  judgment, plaintiff reiterated that the amended complaint was drafted by a jailhouse lawyer who

5  failed to characterize plaintiff's injuries as a broken nose, eye-socket, cheekbone, etc., rather than

6  a "severe beating."  (Dkt. No. 97 at 2.)  Plaintiff now asserts that the only time he was beaten was

7  on July 7, 2005.  (Id.)  With regard to the incorrectly pled date of January 19, 2005, plaintiff

8  states:

9          Wherefore and nevertheless if plaintiff can't name dates February
        2005 to July 7, 2005 as transaction and occurrences that [arose] out
10         of the same acts or series of acts that amounted to the plaintiff
        being tortured, and this is the only reason plaintiff alleged the
11         incorrect date of January 19, 2005, because before plaintiff
        obtained discovery and knew February 7, 2005 was the date he
12         could remember, and all plaintiff was trying to do was assert the
        beginning of the transaction and occurrence that were all a series of
13         the same acts of torture and abuse.

14  (Dkt. No. 97 at 2.)

15          B.  Plaintiff's Deposition

16          The parties have submitted plaintiff's testimony from his August 6, 2010

17  deposition, in which plaintiff concedes that he arbitrarily picked the January 19, 2005 date.  (Dkt.

18  No. 94 at 40.)  Plaintiff stated:

19         my memory and my posttraumatic stress syndrome, the dates and
        everything – I had to file – due to the statute of limitations, I had to
20         file the claim erroneously, and then I had to amend it erroneously.
        It needs to be amended again in the interest of justice.
21

22  (Id.)  After defense counsel noted that plaintiff's amended complaint is detailed on the incident

23  involving sergeant's court on April 8, 2005, plaintiff disputed that the amended complaint was

24  accurate, and the following exchange took place:

25          A.  [Plaintiff]  In that complaint it says that I woke up in a puddle of blood.

26          Q.  [Defense Counsel]  And feces.

6

A.  And feces.

Q.  Is that not true?

A.  That['s] a whole – all incidents mixed together.  That's what I'm trying to tell you.

     The guy that wrote my complaint, me not knowing the law, put them all together, and it's a whole bunch of incidents that happened in a matter of time while I was in custody at Sacramento, and it needs to be amended and it needs to be separated, it needs – everything, the dates, the time, the people, the places, because it's incorrect.  And for me to speak on it, I would be speaking on this, but I'd also be speaking on another incident because I didn't wake up on this incident in – with blood and feces and stuff like that.

Q.  On the 4/8/05 incident?

A.  Right.

     Or my nose broke or none of that.  That's [a] whole bunch of incidents combined.  All of it happened, but it's all mashed together because of my memory of the date, the times, the people. It had to be filed that way.

Q.  All right.  Going back to the 4/8/05 incident, just so the record is clear, you didn't wake up in blood, feces, urine, unconscious on your cell floor that day?

A.  Unconscious I did.

Q.  But not covered in urine and feces and stuff?

A.  No.

Q.  And vomit?

A.  No.  Not that day.

Q.  You just woke up unconscious?

A.  Yeah.  I just woke up from being choked out.

(Dkt. No. 94 at 60-62.)  Plaintiff identified an officer by the name of Vasquez and another

officer, whose name plaintiff could not recall, as the perpetrators of the April 8, 2005 alleged use

of excessive force.  (Dkt. No. 94 at 62.)  Plaintiff stated he had the other officer's name in his

1   discovery.[5]  (Id.)  As noted above, plaintiff received the discovery on April 15, 2010.

2   III.  Leave to Amend

3           A.  Introduction

4           The court must now determine whether plaintiff should be allowed leave to file a

5   third amended complaint at this late stage of the proceedings.[6]  In his opposition to the motion

6   for summary judgment, plaintiff now claims:

7                there is no dispute that defendants have records that plaintiff was in
                 custody of the [Sacramento County Jail] February 7th, 2005 until
8                July 7th, 2005, there is no dispute that in plaintiff's original
                 complaint, the injuries described relate to the July 7th, 2005
9                incident date and in the [First Amended Complaint] plaintiff's
                 injuries describe the April 8, 2005 incident, and the July 7th
10               incident, and the April 11, 2005 incident, et al. incidents described
                 in detail in the [Second Amended Complaint] that was denied.

11

12   (Dkt. No. 94 at 3:18-27.)  Plaintiff contends that "the defendants' assertion of January 19th as the

13   date of plaintiff's claim has never been stated as the date of the incident as a fact, only [as] an

14   'allegation.'"  (Dkt. No. 94 at 5.)  "Plaintiff asserts February 7th 2005 until July 7th 2005, a

15   series of transactions and occurrences all relating to a single cause of action:  torture."  (Dkt. No.

16   94 at 8-9.)  It appears plaintiff now seeks to litigate a number of incidents he alleges took place

17   while housed at the Sacramento County Jail from February 7 to July 7, 2005.

18           Defendants contend that plaintiff should not be granted another opportunity to

19   amend the complaint.  (Dkt. No. 100 at 3.)  Defendants argue that plaintiff is attempting to

20   circumvent the entry of summary judgment by attempting to change the date of the incident

21   alleged in the amended complaint.  (Id.)

22   _____

23        [5]  In his opposition, plaintiff provided a copy of Deputy Cherry's reply to plaintiff's
     grievance that Deputy Vasquez and Deputy Cherry entered plaintiff's cell on April 8, 2005,
24   allegedly forced plaintiff to his knees, and allegedly choked him unconscious.  (Dkt. No. 94-1 at
     130.)

25

26        [6]  Because no motion to amend is pending, the court evaluates whether plaintiff should be
     granted leave to amend sua sponte, in light of the state of the record.

1          B. <u>Legal Standards</u>

2          Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of

3 amendments and, in general, leave shall be freely given when justice so requires.  <u>See</u> <u>Janicki</u>

4 <u>Logging Co. v. Mateer</u>, 42 F.3d 561, 566 (9th Cir. 1994) (district court did not abuse discretion

5 in refusing to grant leave to amend to substitute a party where motion brought 18 months after

6 the complaint was filed and one year after deadline to name new parties had expired).  Because a

7 pretrial scheduling order has been filed in this action, resolution of the issue of whether plaintiff

8 should be granted leave to amend is governed by Rule 16 of the Federal Rules of Civil

9 Procedure.  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 607-08 (9th Cir. 1992).

10 "Once the district court filed a pretrial scheduling order pursuant to Federal Rule of Civil

11 Procedure 16 . . . that rule's standards controlled."  <u>Id.</u>  Rule 16(b) provides that "[a] schedule

12 may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

13 The scheduling order in this case was filed on May 11, 2010.  (Dkt. No. 61.)  Therefore, the court

14 considers whether leave to amend should be granted under the Rule 16 standard for amendment

15 and secondarily under the standard of Rule 15(a).  <u>See</u> <u>Jackson v. Laureate, Inc.</u>, 186 F.R.D. 605,

16 607 (E.D. Cal. 1999).  Under Rule 16(b)(1), the purpose of a scheduling order limiting the period

17 for amending the pleadings is to assure that at some point both the parties and the pleadings

18 become fixed.  Fed. R. Civ. P 16(b) 1983 Advisory Committee Notes.

19          While amendment of pleadings is ordinarily liberally granted under Federal Rule

20 of Civil Procedure 15(a), a movant must demonstrate "good cause" to justify amendment under

21 Federal Rule of Civil Procedure 16(b).  <u>Johnson</u>, 975 F.2d at 606-07.  The "good cause" standard

22 "focuses on the diligence of the party seeking amendment." <u>Id.</u> at 607 (citing <u>Johnson</u>, 975 F.2d

23 at 609).  For instance, good cause can be found where the non-moving party is already on notice

24 of the moving party's reasons for modifying the scheduling order.  <u>Sousa v. Unilab Corp. Class II</u>

25 <u>(Non-Exempt) Members Group Benefit Plan</u>, 252 F. Supp. 2d 1046, 1059 (E. D. Cal. 2002)

26 (finding good cause and modifying scheduling order to include defendant's statute of limitations

1  defense where plaintiff had been aware of defense's existence).

2          The district court may modify the pretrial schedule if it cannot reasonably be met

3  despite the diligence of the party seeking the extension." <u>Johnson</u>, 975 F.2d at 609 (internal

4  quotation marks omitted).  However, "[i]f the party seeking the modification was not diligent, the

5  inquiry should end and the motion to modify should not be granted." <u>Zivkovic v. S. Cal. Edison</u>

6  <u>Co.</u>, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal quotation marks omitted).  In addition to a

7  lack of diligence, "prejudice to the party opposing the modification" may supply additional

8  reasons to deny modification.  <u>Johnson</u>, 975 F.2d at 609.

9          In order to demonstrate diligence, plaintiff must show whether he collaborated

10 with the court in setting a schedule; whether matters that were not, and could not have been,

11 foreseeable at the time of the scheduling conference caused the need for amendment; and

12 whether the movant was diligent in seeking amendment once the need to amend became

13 apparent.  <u>Id.</u> at 608 (citations omitted).  "[C]arelessness is not compatible with a finding of

14 diligence and offers no reason for a grant of relief." <u>Johnson</u>, 975 F.2d at 609.  However, the

15 district court is given broad discretion under Rule 16.  <u>Id.</u> at 607.

16         Therefore, in interpreting the "good cause" requirement under Federal Rule of

17 Civil Procedure 16(b), the court considers, primarily, "the diligence of the party seeking the

18 amendment." <u>Johnson</u>, 975 F.2d at 609.  As a secondary consideration, the court considers the

19 degree of prejudice to the opposing party.  <u>Id.</u>

20         C.  <u>Application</u>

21         Plaintiff is proceeding without counsel, and his pleadings are to be liberally

22 construed.  However, factual contentions set forth in pleadings are required to have evidentiary

23 support.  Fed. R. Civ. P. 11(b).  Moreover, defendants are entitled to timely notice of valid claims

24 brought against them.  After careful review of plaintiff's filings in this action, the court finds that

25 plaintiff has failed to be diligent, as more fully set forth below, and therefore, plaintiff should not

26 be permitted to file a third amended complaint.

1    Plaintiff was previously permitted leave to amend and filed his amended

2  complaint on April 20, 2009.  (Dkt. No. 18.)  The court's scheduling order issued on May 11,

3  2010.  Although the scheduling order did not provide a separate deadline for filing motions to

4  amend or to substitute parties, the court required all pretrial motions to be filed on or before

5  November 8, 2010.  (Dkt. No. 18 at 6.)  Moreover, on October 21, 2010, plaintiff was informed

6  that he must demonstrate good cause to modify the court's scheduling order before the court

7  considers a request to amend the complaint.  (Dkt. No. 81.)

8    Plaintiff's deposition testimony makes clear that plaintiff knowingly filed what he

9  now asserts were erroneous complaints.  Rather than informing the court at the time of filing

10 these complaints that plaintiff allegedly suffered from memory loss or post traumatic stress and

11 was unable to clearly provide dates, the names of defendants, and certain facts until discovery

12 was completed, the record reflects plaintiff filed pleadings he knew contained incorrect

13 information.  Importantly, plaintiff concedes that he wrote out a story listing "incident by

14 incident" claims demonstrating excessive force, and other alleged constitutional violations, that

15 occurred "on several different occasions" (dkt. no. 87 at 3) for his jailhouse lawyer prior to the

16 filing of the April 20, 2009 amended complaint.  Plaintiff concedes that he not only knew the

17 amended complaint was factually inaccurate, but admits he further changed the amended

18 complaint in the belief it would somehow allow him to later claim there was a series of Eighth

19 Amendment violations throughout his incarceration at the Sacramento County Jail.  The fact that

20 plaintiff was aware, earlier than April 20, 2009, that he had allegedly sustained more than one

21 incident of excessive force on different days, renders implausible his subsequent claims that his

22 failed memory or post traumatic stress made it impossible for plaintiff to clarify for the court

23 whether he was alleging separate incidents of excessive force or other constitutional violations.

24    Plaintiff failed to provide the court notice of these pleading discrepancies even

25 after (1) the court directed plaintiff on November 23, 2009 to clarify whether the May 16, 2005

26 incident was the same as the January 19, 2005 incident, (2) plaintiff received discovery on April

11

15, 2010, (3) the court set a schedule on May 11, 2010, (4) plaintiff was deposed on August 8, 2010, and (5) the court's October 21, 2010 order, where the court noted that plaintiff's February 4, 2010 response conflicted with defendants' suggestion that April 5, 2008 was the correct date of the incident pled in the amended complaint.  Even in his motion to file a second amended complaint, plaintiff failed to inform the court he had identified unnamed defendants and that the proposed second amended complaint served to provide those names for the allegations contained in the operative complaint and to rectify factual errors pled in the amended complaint.  Plaintiff did not state his proposed second amended complaint clarified the confusion over the January 19, 2005 date.  Rather, plaintiff vaguely claimed he moved to amend to establish "names, dates and incidents."  The 156 page second amended complaint did not clarify that the January 19, 2005 date had been pled in error, rather than simply adding more incidents, and did not identify that plaintiff had now identified certain defendants who were previously identified as Doe defendants in the amended complaint.  Although plaintiff did not include any allegations concerning incidents occurring on January 19, 2005, the injuries alleged in the amended complaint were now included as occurring on different dates, and exponentially expanded the number of defendants sued and the alleged constitutional violations claimed without explanation.  At the time of the filing of plaintiff's motion to file a second amended complaint, the court did not have benefit of plaintiff's August 6, 2010 deposition testimony explaining the state of the record.

        Moreover, in plaintiff's February 4, 2010 filing, in which he again confirmed January 19, 2005 as the date of injury, plaintiff failed to explain he was challenging more than one incident.  Indeed, plaintiff stated, "To the best of plaintiff's recollection the events occurred on or about January 19, 2005."  (Dkt. No. 39 at 3.)  The court expressly directed plaintiff to advise whether the May 16, 2005 incident was different from the January 19, 2005 incident.  The plain meaning of plaintiff's response is that plaintiff was challenging events that took place on one day—not various days, and not separate incidents of excessive force.  The court understands that plaintiff may not recall the precise day of an injury, or recall the name of an alleged

perpetrator, but plaintiff was present during the various incidents he now claims occurred to him at the jail, yet he failed to expressly state in the amended complaint or his response that his alleged constitutional violations were the result of <u>numerous</u> alleged incidents occurring over many <u>different</u> days. Even in plaintiff's December 2, 2010 untimely-filed motion, he provided conflicting statements as to the nature of his allegations as well as the dates the incidents occurred. (Dkt. No. 87.)

Therefore, plaintiff's claims that his amended complaint is sufficient to demonstrate his intent to plead an assortment of violations from the date he was booked into the county jail until the date he was transferred from the jail, amounting to "torture" in violation of the Eighth Amendment, are unavailing. Even liberally construed, plaintiff's amended complaint makes no such "continuing violation" allegation. A reasonable reading of plaintiff's amended complaint suggests plaintiff was allegedly attacked in his cell after his appearance at sergeant's court <u>on the same day</u>. Although plaintiff claims the amended complaint was not drafted by him, but by a jailhouse lawyer, plaintiff signed and filed the amended complaint, and concedes that he changed the date of the alleged incident of excessive force. Plaintiff's deposition testimony suggests plaintiff was well aware his amended complaint was "erroneous," and contained a blending of facts from different incidents. As a pro se litigant, plaintiff is responsible for his pleadings. Fed. R. Civ. P. 11.[7]

---

[7] Rule 11, in pertinent part, provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

Moreover, plaintiff's efforts to extrapolate legal theories by claiming the alleged injuries in his original complaint join together with the injuries pled in the amended complaint to demonstrate a form of continuing violation theory are unavailing.  Indeed, plaintiff was previously informed that:

> the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This requirement exists because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

(Dkt. No. 8 at 3.)  Plaintiff "cannot be allowed to amend [the] complaint whenever and however [he] wish[es]."  See Van Slyke v. Capital One Bank, 2007 WL 3435095, at *4 (N.D. Cal. 2007) (finding that plaintiffs in class action were not diligent because they were aware of new facts in August but did not seek leave to amend until October; motion to file third amended complaint denied).[8]

---

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

[8]  Indeed, if the court were to grant plaintiff leave to amend, his claims would be limited to those best described in the amended complaint.  Because the allegations in his amended complaint appear to stem from the April 8, 2005 incidents occurring during and after "sergeant's court," plaintiff would be limited to his claim that unnamed defendants allegedly used excessive

14

1      Here, the record demonstrates plaintiff has failed to exercise diligence in

2   identifying his claims, the date or dates on which the alleged violations occurred, or the parties

3   involved.  While it is not clear that plaintiff's filings were made in bad faith, they were more than

4   careless.  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

5   allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed- me

6   accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

7   Twombly, 550 U.S. 554, 555 (2007)).  Certainly plaintiff was aware at the time of the filing of

8   the amended complaint that he was filing an amended complaint alleging incorrect facts and that

9   he had allegedly suffered two separate incidents of excessive force on different days.  Indeed, if

10   plaintiff could provide his jailhouse lawyer with an "incident by incident" story concerning what

11   took place at the Sacramento County Jail prior to the preparation of the amended complaint,

12   plaintiff could have clarified the bare facts for the court, at least by the time the court sought

13   clarification on November 23, 2009.  Plaintiff failed to do so.

14      The overall record demonstrates that plaintiff pursued his claims carelessly, which

15   as the Ninth Circuit has stated, "is not compatible with a finding of diligence and offers no

16   reason for a grant of relief."  Johnson, 975 F.2d at 609 (citing Engleson v. Burlington Northern

17   R.R. Co., 972 F.2d 1038, 1043 (9th Cir. 1992).  Although this court is loathe to recommend that

18   claims of alleged excessive force be barred, the issue of whether plaintiff may be prejudiced by

19   this ruling is irrelevant, given that where a lack of diligence has been found, the inquiry must

20   end.  Johnson, 975 F.2d at 609.

21      Also, the finding that plaintiff was not diligent is supported by Gripp v. County of

22   Siskiyou, 107 F.3d 16 (9th Cir. 1996).  Gripp, proceeding without counsel, brought a civil rights

23   claim pursuant to 42 U.S.C. § 1983 alleging excessive force against a number of police officers

24   and a failure to train claim against Siskiyou County.  Id.  Even though Gripp was aware of the

25   _____

26   force on plaintiff on April 8, 2005.

1  names of the Siskiyou County officers who allegedly used excessive force, Gripp filed the

2  complaint naming only "unknown officers." Id.  Gripp failed to amend the complaint prior to the

3  expiration of the deadline set forth in the scheduling order, and the district court refused to grant

4  Gripp leave to amend. Id.  Gripp appealed.  Gripp argued that he would be prejudiced if not

5  allowed to name the individual officers, but the Ninth Circuit stated that "[a] showing of

6  prejudice . . . is not enough.  Once it is shown that a party was not diligent, no amount of

7  prejudice will satisfy the good cause standard." Id. (citing Johnson, 975 F.2d at 609).

8           Here, although plaintiff did not know the names of the officers in question, the

9  record reflects plaintiff was aware at the time he filed the amended complaint that the facts set

10  forth in the amended complaint were not accurate, and that he believed he was subjected to

11  excessive force on more than one occasion.  Rather than inform the court, seek an extension of

12  time in which to file the amended complaint, or timely seek leave to amend to clarify these

13  pleading discrepancies, plaintiff continued to obfuscate the true nature of his pleadings until long

14  after the scheduling order had issued.  It was plaintiff's burden to prosecute his case properly.

15           Therefore, as a result of plaintiff's failure to pursue the amendment of the instant

16  claims diligently, plaintiff should be denied leave to amend.[9]

17           In addition, defendants would be prejudiced by allowing plaintiff to amend at this

18  late stage of the proceedings.  First, plaintiff concedes the allegations contained in the amended

19  are factually inaccurate, so defendants have not had timely notice of plaintiff's true claims.

20  Second, allowing plaintiff to file a third amended complaint at this late stage would require

21  beginning this 2009 case anew, including locating previously unnamed parties and attempting to

22

23           [9] Plaintiff's claims that prison officials interfered with plaintiff's legal and writing
   materials, as well as access to the law library, are also unavailing.  Plaintiff's first filing
24  concerning access to his legal materials was filed on November 18, 2009, after plaintiff was
   transferred to a different institution.  The record reflects plaintiff was aware prior to April 20,
25  2009, that the factual allegations of the amended complaint were incorrect.  Moreover, review of
   the court docket reflects plaintiff has timely complied with court orders, successfully sought
26  extensions of time, and has filed numerous documents on his own behalf.

1   accomplish service of process.  Third, the appearing defendants have engaged in discovery, and

2   deposed the plaintiff, all of which would have to be reopened and repeated.  Amendment is

3   prejudicial if proceedings are delayed by the reopening of discovery.  See Lockheed Martin Corp.

4   v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (where moving party faced

5   summary judgment motion, a motion seeking to add claims on which discovery had not been

6   undertaken not only demonstrated prejudice to defendants, but might also "reflect bad-faith" by

7   the movants).  Moreover, because the incidents took place in 2005, almost six years ago,

8   witnesses' memories have grown dim, evidence may be difficult to obtain, and service of process

9   may also be difficult to accomplish.

10          D.  Conclusion

11          For all of the above reasons, this court finds that plaintiff was not diligent in

12   pursuing his true claims, and justice is not served by permitting plaintiff to file a third amended

13   complaint under these circumstances.

14   IV.  Motion for Summary Judgment

15          Defendants move for summary judgment on the grounds, inter alia, that plaintiff

16   was not in the custody of the Sacramento County Jail on January 19, 2005.  Plaintiff avers that he

17   "did dispute and does dispute and refute the defendants' assertion of January 19th as the date of

18   plaintiff's claim.  This date has never been stated as the date of the incident as a fact, only as an

19   'allegation.'" (Dkt. No. 94 at 5.)  Plaintiff claims he "never [gave] a sworn statement to being in

20   [the Sacramento Main Jail] on January 19, 2005, only on/or about."  (Dkt. No. 94 at 157.)

21          A.  Legal Standard for Summary Judgment

22          Summary judgment is appropriate when it is demonstrated that the standard set

23   forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if

24   the movant shows that there is no genuine dispute as to any material fact and the movant is

25

26

1    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[10]

2            Under summary judgment practice, the moving party always bears
             the initial responsibility of informing the district court of the basis
3            for its motion, and identifying those portions of "the pleadings,
             depositions, answers to interrogatories, and admissions on file,
4            together with the affidavits, if any," which it believes demonstrate
             the absence of a genuine issue of material fact.
5

6    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

7    56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need

8    only prove that there is an absence of evidence to support the non-moving party's case." Nursing

9    Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

10   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

11   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

12   burden of production may rely on a showing that a party who does have the trial burden cannot

13   produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment

14   should be entered, after adequate time for discovery and upon motion, against a party who fails to

15   make a showing sufficient to establish the existence of an element essential to that party's case,

16   and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

17   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

18   necessarily renders all other facts immaterial." Id. at 323.

19           Consequently, if the moving party meets its initial responsibility, the burden then

20   shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.

21   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting

22   to establish the existence of such a factual dispute, the opposing party may not rely upon the

23   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

24   _____

25       [10]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
     2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26   56, "[t]he standard for granting summary judgment remains unchanged."

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

By order filed June 17, 2009, the court advised plaintiff of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

B.  <u>Undisputed Facts</u>

For purposes of the instant motion for summary judgment, the court finds the following facts are undisputed.

1.  On February 4, 2010, plaintiff filed a document styled "declaration," stating that "to the best of plaintiff's recollection the events occurred on or about January 19, 2005." (Dkt. No. 39 at 3.)

2.  Plaintiff was not in the custody of the Sacramento Main Jail on January 19, 2005.

3.  Plaintiff was booked into the County Main Jail on February 7, 2005.

4.  In his deposition, plaintiff conceded that the factual allegations contained in the amended complaint are incorrect.  (Dkt. No. 94 at 40, 60-62.)

5.  The Sacramento County Sheriff's Department policies are codified as General Orders and Main Jail Operations Orders, and contain policies governing the use of force, i.e., General Order 2/11; Main Jail Operations Order 3/110.  (Dkt. No. 83-2 at 2.)

6.  All Sacramento County Sheriff's Department deputies are required to be familiar with the General Orders and Main Jail Operations Orders, and are required to review all of these orders as well.  (Dkt. No. 83-2 at 2.)

7.  All Sacramento County Sheriff's Department deputies receive training regarding the use of force, which meets or exceeds California Peace Officer Standards Training. (Dkt. No. 83-2 at 3.)

C.  <u>Application</u>

Title 42 § 1983 requires plaintiff to prove that a person acting under color of state law committed an act that deprived plaintiff of some right, privilege, or immunity protected by the Constitution or federal law.  Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).  Counties and their law enforcement departments are "persons" within the meaning of the statute.  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690 (1978); Shaw v. State of California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 604 (9th Cir. 1986).

Municipal entities are subject to liability where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort."  Monell, 436 U.S. at 691.  A direct causal link between departmental policy or custom and the alleged deprivation is therefore required.  City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff may establish municipal liability by proving that the violation was committed pursuant to a formal departmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."  Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).

In the instant case, it is undisputed that plaintiff was not in the custody of the Sacramento County Main Jail on January 19, 2005.  Nevertheless, in the operative amended complaint, filed April 20, 2009, plaintiff alleged he was a pretrial detainee in the custody of the Sacramento County Jail on January 7, 2005, and then described various incidents that took place "on January 19, 2005," during and after "sergeant's court."  (Dkt. No. 18 at 5.)  When subsequently directed to clarify whether there were two separate incidents of excessive force, one on January 19, 2005, and one on March 16, 2005, plaintiff confirmed that his allegations were based on incidents that occurred on or about January 19, 2005.  As set forth above, plaintiff failed to timely rectify a pleading he knew was factually inaccurate at the time of filing.  The above record makes clear that at the time of filing the amended complaint, plaintiff was aware that he was attempting to litigate incidents occurring on different days, yet plaintiff did not clarify this to the court, even when specifically directed to do so.  Plaintiff has also failed to demonstrate

1   diligence in seeking leave to amend at this late stage of the proceedings.  In the motion to amend

2   and proposed second amended complaint, submitted on August 23, 2010, plaintiff failed to

3   explain the factual errors contained in the amended complaint.

4           Plaintiff cannot demonstrate a constitutional violation occurred on January 19,

5   2005, because he was not in custody at that time, and he concedes the allegations contained in the

6   amended complaint are inaccurately pled.  Therefore, defendants County of Sacramento and the

7   Sheriff of Sacramento County cannot be held liable for the allegations set forth in plaintiff's

8   amended complaint, and are entitled to summary judgment.

9           But even if the court construed plaintiff's amended complaint as challenging the

10  alleged incidents of excessive force that allegedly occurred on April 8, 2005, during and after

11  sergeant's court, plaintiff has failed to demonstrate <u>Monell</u> liability on the part of answering

12  defendants Sheriff John McGinness and the Sacramento County Jail.

13          Defendants Sheriff John McGinness and the Sacramento County Jail have

14  presented evidence demonstrating that the Sacramento County Sheriff's Department policies are

15  codified as General Orders and Main Jail Operations Orders, and contain policies governing the

16  use of force, i.e., General Order 2/11; Main Jail Operations Order 3/110.  (Dkt. No. 83-2 at 2.)

17  Moreover, defendants have provided evidence that all Sacramento County Sheriff's Department

18  deputies are required to be familiar with these policies and are required to review these policies

19  as part of their training.  (<u>Id.</u>)  Specifically, all Sacramento County Sheriff's Department deputies

20  "receive training regarding the use of force."  (Dkt. No. 83-2 at 3.)

21          In opposition, plaintiff claims that "Sacramento Sheriff's [Officers] did not

22  comport to the General Order regarding the use of force (2/11) and Main Jail Operations Order

23  (3/110)."  (Dkt. No. 94 at 5; 94-1 at 67.)  In his separate statement of undisputed material facts,

24  plaintiff claims the policies are not kept.  (Dkt. No. 94-1 at 67.)  Plaintiff also claims that

25          customs of violating the Main Jail's Operations Order is a practice
            that [is] public[ly] and privately known through suits, newspapers,
26          etc., as well as the instant case at bar—Sacramento County Jail and

1                     Sheriffs have a long history of abuse and excessive force.  See
                    Plaintiff's Declaration.

2

3 (Dkt. No. 94-1 at 67.)  Plaintiff refers the court to "Plaintiff's Declaration," but fails to identify to

4 which declaration he refers.  (Dkt. No. 94-1 at 67.)  Plaintiff's declaration filed January 18, 2011,

5 makes no reference to plaintiff's policy or custom arguments.  (Dkt. No. 97.)  In the midst of

6 plaintiff's 161 page opposition, plaintiff provides various declarations concerning witnesses, etc.

7 (Dkt. No. 94-1 at 17-22.)  One declaration by plaintiff states as follows:

8                     Defendants did not adequately or lawfully put into effect and
                    provide plaintiff the protection of the law in keeping/comporting to

9                     Operations Order 3/110, Operations Order and General Order 2/11
                    as well and furthermore defendants if properly trained such training

10                     was ineffective . . . .

11 (Dkt. No. 94-1 at 18.)  Aside from this declaration, plaintiff has presented no evidence.

12           Plaintiff's statements that defendants failed to comport with County policies, or

13 that policies were not kept, are insufficient to state a claim under <u>Monell</u>.  As argued by

14 defendants, there is no <u>respondeat</u> <u>superior</u> liability against municipal entities under 42 U.S.C.

15 § 1983.  Liability under <u>Monell</u> must be based on the municipality's custom or policy.

16 Plaintiff has failed to adduce evidence that the use of alleged excessive force was the result of

17 municipal defendants' custom or policy.  Indeed, plaintiff concedes the County has policies in

18 place, but simply argues defendants failed to "comport" with those policies.  Plaintiff has

19 provided no evidence demonstrating that it was the policy or custom of these municipal

20 defendants that caused plaintiff's alleged constitutional violations.

21           The case of <u>Justin v. City and County of San Francisco</u>, 2008 WL 1990819 (N.D.

22 Cal. May 5, 2008) is instructive.  In <u>Justin</u>, the plaintiffs alleged the existence of an informal

23 policy or custom at the San Francisco Jail of tolerating the excessive use of force on pretrial

24 detainees.  The district court granted defendants' motion for summary judgment, analyzing the

25 issue as follows:

26 ////

1        Without evidence beyond their allegations of this isolated incident,
Plaintiffs have failed to meet their burden on summary judgment of
2        showing that there is a widespread policy.  Without more, such as
evidence of repeated constitutional violations based on this policy,
3        Plaintiff's argument is tenuous and does not rise to the level of a
Monell violation.  See, e.g., Irish v. City of Sacramento, 2007 WL
4        570258 *9 (N.D. Cal.) ("While a Section 1983 plaintiff may
attempt to prove the existence of custom or informal policy with
5        evidence or repeated constitutional violations for which errant
municipal officials were not discharged or reprimanded, . . . no
6        such evidence was produced by plaintiff."); Medora v. City and
County of San Francisco, 2007 WL 2522319 *13 (N.D. Cal)
7        (plaintiff's proof that officers involved in incident failed to follow
department policy governing internal reporting and investigation of
8        complaints of excessive force was insufficient to raise triable issue
of fact of a 'widespread policy' which promoted excessive force
9        and caused plaintiff's particular injury).

10       Because Plaintiffs' only evidence to support their Monell claim is
their own conclusory allegations, Defendants are entitled to
11       summary judgment . . . .

12  Justin, 2008 WL 1990819 at *7.  See also Davis v. City of Ellensburg, 869 F.2d 1230, 1234-35

13  (9th Cir. 1989) (summary judgment appropriate where Davis alleged prior incidents of excessive

14  use of force but failed to present any probative evidence suggesting that excessive force had

15  indeed been used or that the use of excessive force was pervasive enough to rise to the level of a

16  custom); Meehan v. County of San Diego, 856 F.2d 102, 107 (9th Cir. 1988) ("Proof of a single

17  incident of unconstitutional activity is not sufficient to impose liability under Monell, unless

18  proof of the incident includes proof that it was caused by an existing, unconstitutional [local

19  government] policy, which policy can be attributed to a [local government] policymaker.")  Mere

20  negligence in training or supervision does not give rise to a Monell claim.  Davis v. City of

21  Ellensburg, 869 F.2d at 1235.

22        In the instant case, plaintiff has not met his burden of establishing the existence of

23  a policy promoting the use of excessive force at the Sacramento County Main Jail.  Rather, he

24  has submitted evidence suggesting, at most, isolated incidents involving the use of force against

25  him at the Sacramento County Main Jail which plaintiff describes as excessive.  Plaintiff has not

26  presented the court with any expert opinion, statistical, or any other form of evidence in support

1   of his claim that a policy or custom of tolerating the excessive use of force on inmates exists at

2   the Sacramento County Main Jail.  Plaintiff mentions lawsuits and newspaper articles generally,

3   but provides no specific examples or evidence.  Defendants have provided evidence

4   demonstrating Sacramento County Sheriff's deputies are trained in the use of force.  Plaintiff has

5   provided no evidence in rebuttal.  Therefore, the motion for summary judgment brought on

6   behalf of defendants Sheriff John McGinness and the Sacramento County Jail with respect to

7   plaintiff's policy and training in connection with use of force claims arising from the April 5,

8   2008 incidents should be granted.

9           D.  Conclusion

10          For all of the foregoing reasons, defendants are entitled to summary judgment on

11   plaintiff's amended complaint.

12   V.  Additional Matters

13          On April 8, 2011, plaintiff filed a declaration in support of his November 1, 2010

14   motion for order to access legal materials, as well as a motion for reconsideration of the court's

15   October 21, 2010 order denying plaintiff's motion to amend.  On April 22, 2011, defendants filed

16   a motion to strike plaintiff's April 8, 2011 filings inasmuch as they seek to rehash prior motions

17   that have been resolved, are untimely, and violate this court's order that plaintiff "shall file no

18   further documents pending resolution of the motion for summary judgment."  (Dkt. No. 98 at 2.)

19          Plaintiff's motion for order to access legal materials was denied on February 4,

20   2011, so his additional declaration is untimely and will be placed in the court file and

21   disregarded.  Plaintiff's request for reconsideration of October 21, 2010 order is also untimely.

22   Local Rule 303(b), states "rulings by Magistrate Judges shall be final if no reconsideration

23   thereof is sought from the Court within fourteen days . . . from the date of service of the ruling on

24   the parties. . ."  E.D. Local Rule 303(b).  However, the instant findings and recommendations

25   essentially revisits whether plaintiff should be granted leave to amend, so plaintiff's motion is

26   also unnecessary.  In light of the above, the court denies defendants' motion to strike as

unnecessary.

VI.  Conclusion

   Accordingly, IT IS HEREBY ORDERED that:

   1.  Plaintiff's April 8, 2011 filings (dkt. no. 105) are disregarded as untimely-filed; and

   2.  Defendants' April 22, 2011 motion to strike is denied.

   IT IS HEREBY RECOMMENDED that the November 8, 2010 motion for summary judgment (dkt no. 83) be granted, and this action be dismissed with prejudice.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 9, 2011

                         _____
                         KENDALL J. NEWMAN
                         UNITED STATES MAGISTRATE JUDGE

turn0117.msj